Eduardo GARCIA, Plaintiff,

v.

Shirley S. CHATER, Commissioner
of Social Security, Defendant.

No. 3:96CV0871 (RNC).

United States District Court,
D. Connecticut.

March 26, 1998.

Charles A. Pirro, III, Pirro, Church &
Cook, Norwalk, CT, for Plaintiff.

Deirdre Anne Martini, U.S. Attorney's Office, Bridgeport, CT, for Defendant.

### RULING AND ORDER

CHATIGNY, District Judge.

This is appeal from a decision of the Commissioner of Social Security denying an application for Supplemental Security Income benefits. Plaintiff contends that he is unable to work due to a combination of mental and physical impairments, but he relies primarily on a claim that he has severe mental impairments. Specifically, he contends that he has a personality disorder and is either mentally retarded or suffers from a factitious disorder, which causes him to pretend to be retarded.[1] In a detailed opinion, an Administrative Law Judge found that plaintiff has a severe impairment of his right knee, a non-severe impairment of his left knee and non-severe mental impairments. The ALJ also found that plaintiff retains the residual functional capacity to perform light work and is capable

---

1. Factitious disorder, as defined by the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, is a mental disorder characterized by intentional production or feigning of physical or psychological signs and symptoms, the motivation for which derives not from external incentives, such as a desire to obtain disability benefits, but from a psychological need to assume the role of a sick person. DSM–IV at 471–72. The lack of external incentives for feigning symptoms distinguishes factitious disorder from malingering.

of performing his previous work as a custodian. The ALJ's decision is supported by substantial evidence. Accordingly, the decision is affirmed.

Plaintiff is 32 years old. He was born and raised in Puerto Rico. He claims to have stopped going to school after the second grade. He speaks Spanish but does not speak English and cannot read or write. His last job was at a McDonald's restaurant cleaning bathrooms, mirrors and doors, mopping floors and removing garbage bags from trash receptacles.

On July 7, 1994, plaintiff filed an application for Supplemental Security Income benefits claiming disability as a result of injuries he sustained the previous month when he was struck by a car while riding a bike. The application was denied initially and on reconsideration and plaintiff requested a hearing. On June 29, 1995, a hearing was held. Plaintiff testified through a Spanish language interpreter. The ALJ concluded that plaintiff can perform the duties of the job he had at McDonald's and therefore denied the application. The Appeals Council denied plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.

Plaintiff asserts numerous claims of error on this appeal. None of them warrants reversal or a remand.

Plaintiff's principal contention is that the ALJ erred in failing to find that he suffers from severe mental impairments that meet the listing of section 12.05 of the Listing of Impairments, which deals with mental retardation, or section 12.08, which deals with personality disorders. *See* 20 C.F.R. § 404, Subpart P, App. at 445–446. Plaintiff's claim is based on reports of four examinations conducted between September 1994 and June 1995.

A consulting clinical psychologist, Ralph Welsh, examined plaintiff twice during that period. After the first examination, he found that plaintiff is mildly mentally retarded and has avoidant personality disorder with dependent characteristics. T. 138. The diagnosis of mild mental retardation was based in

part on the results of a battery of tests, which showed, among other things, a full scale IQ of 49. During the second examination in January 1995, it became apparent that plaintiff was consciously attempting to "alter his test performance" and had done so during the first examination. T. 146. Dr. Welsh's report following the second examination states that the "available test data" (i.e. the results of the first and second sets of tests) "suggest [ ]" a diagnosis of "factitious disorder with predominantly psychological signs and symptoms" and "personality disorder, NOS" (i.e. not otherwise specified).[2] T. 146.

A consulting physician, Richard Slutsky, examined plaintiff in October 1994. Dr. Slutsky's report states that plaintiff has "traumatic brain injury and a history of cognitive and psychological problems secondary to it." T. 141. Dr. Slutsky's report shows that he conducted a physical exam and neurologic exam but relied primarily on information provided by an interpreter, Dan Maldonado, who is friendly with the plaintiff.

Plaintiff was also examined by a Spanish-speaking clinical psychologist, Manuel J. Rosales, in June 1995. In a report dated September 8, 1995, after the ALJ issued her decision, Dr. Rosales stated that plaintiff has "significant cognitive deficits" and that his "Full Scale IQ Score is probably within the range of 62 to 67, which suggests that the presence of mental retardation will need to be ruled out." T. 7. The report goes on to say that "[f]urther evaluation of the adaptive level of functioning has to be obtained to confirm this diagnostic impression."

Based on this evidence, plaintiff contends that he has severe mental impairments in that he has a personality disorder (as diagnosed by Dr. Welsh in both September 1994 and January 1995) *and* is either retarded (as Dr. Welsh found in September 1994 and Dr. Rosales found in June 1995), or has a factitious disorder (as stated by Dr. Welsh in January 1995). Plaintiff contends that his mental impairments meet the requirements set forth in both sections 12.05 and 12.08.

2. Personality disorder not otherwise specified refers to disorders of personality functioning that do not meet criteria for any specific personality disorder. DSM–IV at 673.

Plaintiff's claim that the ALJ failed to properly consider and assess his mental impairments is unavailing. The ALJ stated that plaintiff has "non-severe impairments including feigning mental retardation and mental illness ...." T. 20. Though that statement is somewhat ambiguous, it is apparent that the "non-severe impairments" referred to include personality disorder and factitious disorder, as diagnosed by Dr. Welsh following his second examination. The standard document for evaluating mental impairments was completed by the ALJ and appended to her decision as required by the pertinent regulations. See 20 C.F.R. § 404.1520a(d). The document shows that the ALJ evaluated the severity of plaintiff's mental disorders in light of the criteria set forth in sections 12.05 and 12.08 and properly found that the requirements of those sections are not satisfied.[3]

■ Plaintiff's contention that he suffers from mental retardation of the level of severity described in section 12.05 is not supported by the record. Section 12.05 requires mental incapacity evidenced by dependence on others for personal needs. Plaintiff and his witness Mr. Maldonado testified that plaintiff is able to attend to his personal needs. The requirements of section 12.05 may also be satisfied by valid IQ scores. However, the scores plaintiff presented to the ALJ to document his claim are not valid. Dr. Welsh's report of his second examination shows that the scores are unreliable due to plaintiff's conscious attempt to "alter his test performance."[4]

■ Plaintiff's contention that his mental disorders meet the level of severity described in section 12.08 is also unavailing. Dr. Welsh's report following his second examina-

tion provides a basis for finding that plaintiff has a personality disorder and factitious disorder. However, it does not provide a basis for finding that plaintiff's disorders have the level of severity required by section 12.08. Plaintiff's other evidence, consisting of his own testimony and the testimony of Mr. Maldonado, is also insufficient to establish that the requirements of section 12.08 are satisfied. On this record, it cannot be said that plaintiff has deeply ingrained, maladaptive patterns of behavior associated with the traits set forth in paragraph A of section 12.08, resulting in at least three of the functional limitations set forth in paragraph B.

■ Plaintiff contends that a remand is necessary because the ALJ failed to make specific findings concerning his residual functional capacity. However, the ALJ addressed the issue of plaintiff's residual functional capacity in light of the relevant regulations and expressly found that plaintiff retains the capacity to perform a full range of light to medium work. In making that finding, the ALJ appears to have credited plaintiff's testimony that he can walk for an hour, stand for an hour, lift fifty pounds and sit for six hours. It's true, as plaintiff points out, that the ALJ did not specify the frequency with which he can lift certain weights or the distance he can walk. However, the absence of specific findings on those points does not warrant a remand.

■ Finally, plaintiff asserts that the ALJ erred in finding that he can perform the duties of his previous work as a custodian at McDonald's, which the ALJ characterized as unskilled work at the light exertional level. Social Security regulations define light work

---

3. Factitious disorder does not appear in the mental disorders listings in section 12.00 of the Listing of Impairments. Accordingly, to determine whether plaintiff's factitious disorder equals or exceeds a listed impairment, the ALJ was obliged to consider the listed impairment most like factitious disorder. See 20 C.F.R. § 404.1526. The worksheet appended to her decision indicates that she assessed the severity of plaintiff's factitious disorder in light of the criteria for personality disorder. Plaintiff appears to take the same approach on this appeal.

4. Plaintiff's attempt to mislead Dr. Welsh also affects the weight to be given the IQ scores reported by Dr. Rosales. Dr. Rosales's report, which was submitted to plaintiff's counsel in September 1995, does not refer to Dr. Welsh's report of January 1995, or make any mention of plaintiff's previous examinations and IQ tests, or disclose any awareness of a risk that plaintiff might try to manipulate the results of IQ tests as he had before. In the absence of any indication that Dr. Rosales was aware of that risk, his report was properly discounted by the Appeals Council.

as requiring the lifting of no more than twenty pounds at a time, frequent lifting and carrying of ten pounds, and a good deal of walking. 20 C.F.R. § 404.1567(b). Plaintiff testified that his job at McDonald's required him to lift no more than ten pounds at a time and walk no more than three hours during the course of an eight hour shift. Accordingly, the ALJ was justified in classifying the job as light and her finding that plaintiff is still capable of doing the job is adequately supported.

Accordingly, the Secretary's motion to affirm the Commissioner's decision is granted. Plaintiff's motion for summary judgment or, in the alternative, a remand is denied.

So ordered.